**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TWIN CAPITAL PARTNERS, LLC, | |
| Plaintiff, | Civil Action No. 20-02869 (MAS) (ZNQ) |
| v. | MEMORANDUM OPINION |
| PER A. WICKSTROM, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Per A. Wickstrom ("Wickstrom"), TIA Corporation, Behavioral Rehabilitation Services, Inc., and A Forever Recovery, Inc.'s (collectively, "Defendants") Motion to Dismiss (ECF No. 10) Plaintiff Twin Capital Partners, LLC's ("TCP") Amended Complaint (ECF No. 8). Plaintiff opposed (ECF No. 11) and Defendants replied (ECF No. 12). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Rule 78.1. For the reasons set forth below, Defendants' Motion is granted.

**I.    BACKGROUND**

This matter arises from an agreement (the "Agreement") entered into by TCP and Wickstrom on or about December 4, 2018. (Am. Compl. ¶ 10, ECF No. 8.) Under the terms of the Agreement, TCP agreed to act on behalf of Wickstrom "on an exclusive basis as its financial advisor, with respect to certain mortgage financing (other than SBA Financing), financial consulting, private equity/joint venture capital, and portfolio management, with respect to a line

of credit/asset based lending for the properties listed on Schedule A" of the Agreement. (*Id.*) TCP attached the Agreement to its Amended Complaint. (Agreement, Ex. A to the Am. Compl., ECF No. 8-1). Schedule A in the Agreement fails to list any of the properties for which TCP was to secure a line of credit. Instead, Schedule A merely states "[p]roperties to be named later[.]" (*Id.* at *6.)[1] Furthermore, the Agreement defines "Wickstrom and [Corporate Entity to be Added Later]" as "[b]orrower[s]." (*Id.* at *2.) A catchall provision also defines "any of [Wickstrom's] affiliates and any entity owned or controlled by [Wickstrom]" as "[b]orrowers" under the Agreement's terms. (*Id.* at *2.) Similarly, the Agreement's signature line only explicitly names Wickstrom as a signatory to the contract. (*Id.* at *5.) Just above Wickstrom's signature, the Agreement also includes the bracketed notation that "[Corporate Entity to be Added Later]." (*Id.*) Similarly, just below Wickstrom's signature, the Agreement includes a second bracketed notation that Wickstrom signed "individually and as a managing member of [Corporate entity to be Added Later]." (*Id.*)

Under the Agreement, TCP agreed to advise the borrowers in their attempt to secure $5,000,000 in financing. (Am. Compl. ¶ 10.) In exchange for its services, TCP was to receive "a transaction fee equal to two percent of the gross proceeds of any financing on the first $5,000,000 of new financing." (*Id.* ¶ 11.) The transaction fee, minus a $24,000 retainer, equaled $210,000.00. (*Id.* ¶ 21.) TCP maintains that it "performed its obligations under the Agreement by, among other things, successfully obtaining a loan commitment and an additional bridge loan financing for Wickstrom." (*Id.* ¶ 17.) Nevertheless, according to TCP, "Wickstrom failed to cooperate with the lenders and refused to consummate the loans by causing delays and undertaking other actions such that the lenders withdrew their offers." (*Id.* ¶ 19.) Believing that it had held up its end of the

---

[1] Page numbers preceded by an asterisk refer to the page number on the ECF header.

bargain, TCP "sent an invoice to Wickstrom for the remainder of the [t]ransaction fee less the retainer, totaling $210,000.00." (*Id.* ¶ 21.) TCP represents to the Court that "to date, Wickstrom has not paid any of the remaining $210,00.00 due." (*Id.* ¶ 23.)

TCP further alleges "upon information and belief, in an effort to avoid his obligation to pay the remaining $210,000.00 due and outstanding. . . Wickstrom has fraudulently transferred his assets to" TIA Corporation, Behavioral Rehabilitation Services, Inc., and A Forever Recovery ("Entity Defendants"), "which he principally owns and controls.' (*Id.* ¶ 24.) TCP alleges that publicly available court filings demonstrate that Wickstrom is "the founder and owner of a conglomerate of rehabilitation facilities and programs by and through various entities," including but not limited to A Forever Recovery. (*Id.* ¶ 25.) Additionally, TCP alleges that public records "indicate[] that Wickstrom filed for dissolution of marriage on August 26, 2019." (*Id.* ¶ 26.) According to TCP, it has "reason to believe that his pending divorce has led to further fraudulent transfers of his assets to the Corporate Entities." (*Id.*) TCP also alleges that "[a]t all relevant times, there has existed such a unity of interest and common ownership between Wickstrom and the Corporate Entities that the individuality and separateness of the Defendants has ceased to exist." (*Id.* ¶ 28.) The Amended Complaint makes several other allegations against Wickstrom, "upon information and belief," including that "at all relevant times, the business affairs of Defendants were so mixed and intermingled that the same cannot reasonably be segregated and the same are in extricable confusion," and that "Defendants used the others as mere shells and conduits for the conduct of their affairs." (*Id.* ¶¶ 30-31.) TCP concludes that "recognition of the separate existence of the Defendants would . . . permit Defendants to insulate themselves from liability to Plaintiff. Accordingly, the Defendants constitute alter-egos of each other and the fiction

of their separate existence must be disregarded . . . to avoid fraud and injustice to Plaintiff." (*Id.* ¶ 33.)

On February 6, 2020, TCP filed a Complaint against both Wickstrom and the Entity Defendants in the Monmouth County Superior Court. (Superior Ct. Compl., Ex. A to Notice of Removal, ECF No. 1-1.) The Complaint alleged breach of contract and breach of implied covenant of good faith and fair dealing by Wickstrom and the Entity Defendants, among other claims. (*Id.* ¶¶ 21-31.) On March 16, 2020, Defendants removed the action to this Court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.) Shortly thereafter, Defendants moved to dismiss the Entity Defendants from this action. (Defendants' First Motion to Dismiss, ECF No. 2.) TCP then filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).[2] (ECF No. 8.) Unlike the Complaint first filed in the Superior Court, the Amended Complaint does not allege breach of contract or breach of implied covenant of good faith and fair dealing by the Entity Defendants. (Am. Compl. ¶¶ 34-46); (Pl.'s Opp'n Br. 6 n.1 ("Plaintiff is not currently asserting a claim for breach of contract or breach of the implied covenant of good faith and fair dealing against the Entity Defendants, but does not concede that the Entity Defendants are not parties to the [c]ontract." (quoting Agreement at *2 (listing Wickstrom "*and any of* [Wickstrom's] *affiliates and any entity owned or controlled by* [Wickstrom]" as defined "[b]orrower[s]"))).) Accordingly, TCP's Amended Complaint only brings unjust enrichment, *quantum meruit*, and fraud claims against the Entity Defendants. (Am. Compl. ¶¶ 24, 47-50, 51-58, 59-63). In the instant Motion to Dismiss, Defendants do not seek to dismiss the claims against

---

[2] Unless otherwise noted, all references to a "Rule or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

4

Wickstrom. Rather, Defendants only seek "to dismiss all defendants named other than [Wickstrom]." (Second Mot. to Dismiss Br. ("Defs.' Moving Br.") 4, ECF No. 10-1.)

## II.  LEGAL STANDARD

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim [ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered

without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Where a plaintiff pleads fraud, however, the plaintiff "must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props. Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

### III. DISCUSSION

#### A. Choice of Law

"[A] court sitting in diversity will apply the choice-of-law principles of the forum state (here, New Jersey)." *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 131 (D.N.J. 2020). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (N.J. 1992). Here, the contract's terms provide that the "Agreement shall be governed and

6

construed and enforced solely in accordance with the laws of the State of New Jersey." (Agreement at * 4.) Neither TCP nor the Defendants challenge the applicability of New Jersey law to the instant Motion. Accordingly, the Court will apply New Jersey law in its discussion of TCP's Amended Complaint.

**B. Factual Allegations Supporting Plausible Claim for Relief**

Defendants argue that the Amended Complaint is "[v]ague, [a]mbiguous as to [s]pecific [c]laims and [f]ails to [a]ssert [a]llegations" against the Entity Defendants. (Defs.' Moving Br. 8.) The Court agrees and will dismiss on these grounds.

As a preliminary matter, the Court notes that the Amended Complaint does not allege that Defendants TIA Corporation, Behavioral Rehabilitation Services, Inc., or A Forever Recovery were parties to the Agreement. TCP does, however, allege that Wickstrom is "the principal and controlling shareholder" of these corporate entities. (Am. Compl. ¶ 8.) Nevertheless, the Amended Complaint does not allege that Wickstrom and TCP intended for the Entity Defendants to be included among the bracketed "[Corporate Entit[ies] to be Added Later]" referenced throughout the Agreement. (*See, e.g.*, Agreement at *2, *5, *6.) Nor does TCP allege that the Entity Defendants were parties to the contract under the catchall provision defining "[b]orrowers" as "Wickstrom and [Corporate Entity to be Added Later], and any of [Wickstrom's] affiliates and any entity owned or controlled by [Wickstrom]." (*Id.* at *2.) Rather than make these allegations, TCP merely "does not concede that the Entity Defendants are not parties to the Contract" and "reserves the right to seek leave to file a Second Amended Complaint to assert such claims." (Pl.'s Opp'n Br. 6 n.1.)

Instead, the Amended Complaint makes a number of claims "upon information and belief" regarding the Entity Defendants' alleged involvement in Wickstrom's attempt to hide assets. For

7

example, TCP alleges that "upon information and belief, in an effort to avoid his obligation to pay the remaining $210,000.00 due and outstanding to Plaintiff . . . Wickstrom has fraudulently transferred his assets to" TIA Corporation, Behavioral Rehabilitation Services, Inc., and A Forever Recovery. (Am. Compl. ¶ 24.) Additionally, TCP alleges that "upon information and belief, at all times, the business affairs of Defendants were so mixed and intermingled that the same cannot reasonably be segregated and the same are in extricable confusion." (*Id.* ¶ 30.) Moreover, "upon information and belief," TCP alleges that "at all relevant times each of the Defendants used the others as mere shells and conduits for the conduct of their affairs.' (*Id.* ¶ 31.) TCP's Amended Complaint makes these allegations in order to argue that both Wickstrom and the Entity Defendants "constitute alter-egos of each other and the fiction of their separate existence must be disregarded at law and in equality for the ends of justice because such disregard is necessary to avoid fraud and injustice." (*Id.* ¶ 33.)

As TCP argues, it is true that under New Jersey law, courts may pierce the corporate veil either to make a "'corporation's individual principals and their personal assets liable for the debts of the corporation' or to make 'assets of the corporate entity' available to 'satisfy the debts of a corporate insider so that the corporate entity and the individual will be considered one and the same.'" *Hunt Constr. Grp., Inc. v. Farina*, No. 11-4933, 2012 WL 72286, at *3 (D.N.J. Jan. 10, 2012) (quoting *Repetti v. Vitale*, 2011 WL 3962518, at *15-16 (N.J. Super. Ct. App. Div. Sept. 9, 2011)). When considering a party's request to "pierce the corporate veil" of its opponent, New Jersey courts "begin with the fundamental propositions that a corporation is a separate entity from its shareholders and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Craig v. Lake Asbestos of Quebec*, 843 F.2d 145, 149 (3d Cir. 1988) (quoting *Dep't of Envt'l Protec. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1988)

8

(citation omitted)). The corporate veil may be pierced only where "(1) 'the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent' and (2) 'the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.'" *Id.* (quoting *Ventron*, 468 A.2d at 164). Factors to be considered in determining whether to pierce the corporate veil include

> [g]ross under capitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Bd. of Trustees of Teamsters Local 863 v. Foodtown, Inc.*, 296 F.3d 164, 172 (3d Cir. 2002) (quoting *Craig*, 843 F.2d at 149) (alterations in original). These factors, however, "are not a rigid test." *Marketvision/Gateway Research, Inc. v. Priority Pay Payroll, LLC*, No. 10-1537, 2011 WL 1640459, at *9 (D.N.J. May 2, 2011).

Furthermore, "[w]hen a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b)['s]" heightened pleading standards. *Teamsters*, 296 F.3d at 164 n.10; *see also Majestic Blue Fisheries*, 812 F.3d at 307 ("A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue.'" (citation omitted)).

On numerous occasions, courts in this District have granted 12(b)(6) motions to dismiss complaints attempting to "pierce the corporate veil" when filed with conclusory factual allegations. Like the Amended Complaint now before the Court, those complaints pled "upon information and belief," but without sufficient particularity as to the who, what, when, where, and how of the

alleged corporate fraud. For example, similar to TCP, in *Wrist Worldwide Trading*, the plaintiff alleged that a corporation "and its members were operated as a unit without regard to their corporate separateness" with one corporate entity "being merely a shell corporation dominated and controlled" by another corporate entity. *Wrist Worldwide Trading GMBH v. MV Auto Banner*, No. 10-2326, 2011 WL 5414307, at * 4 (D.N.J. Nov. 4, 2011). Furthermore, the plaintiffs in *Wrist Worldwide Trading* alleged that "upon information and belief," the corporate entity was "dominated, controlled and used by another "so that it could evade its liabilities to creditors and commit a fraud or wrong against . . . creditors." *Id.* at *5. The Court found that "the bare-boned allegations of . . . common control and/or management, standing alone, do not rise to the level of plausibility required to survive a 12(b)(6) motion." *Id.*; *see also Holzli v. DeLuca Enterprises*, No. 11-06148, 2012 WL 983693, at * 2 (D.N.J. Mar. 21, 2012) (finding "aside from [p]laintiffs' conclusory statements summarizing the legal elements of their veil piercing claim, no specific factual allegations in the [c]omplaint support a claim of either alter-ego liability or pierce the corporate veil."); *Essex Ins. Co. v. Miles*, No. 10-3598, 2010 WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010) ("[t]he remainder of the complaint contains allegations predicated only on 'information and belief'. . . . These averments are merely a formulaic recitation of the elements of a cause of action for piercing the corporate veil. Reliance . . . on information and belief cannot transform legal conclusions into plausible factual allegations." (internal quotation marks omitted)). Similar to these cases, TCP's conclusory allegations "upon information and belief" that TIA Corporation, Behavioral Rehabilitation Services, and A Forever Recovery, Inc. are mere shells and conduits with which Wickstrom hides assets do not satisfy Rule 9(b)'s heightened pleading standards.

     TCP's other allegations also fail to establish a plausible factual basis for the Court to pierce the corporate veil and keep the Entity Defendants as parties to this matter. TCP alleges that public

records "indicate[] that Wickstrom filed for dissolution of marriage on August 26, 2019." (Am. Compl. ¶ 26.) According to TCP, "Plaintiff has reason to believe that his pending divorce has led to further fraudulent transfers of his assets to the Corporate Entities." (*Id.*) But TCP offers the Court no factual reason to believe that Wickstrom has transferred assets to corporate entities merely because he is going through a divorce. Without more, the allegation is pure speculation.

Additionally, TCP alleges that "in an effort to avoid his obligation to pay the remaining $210,00.00 due and outstanding to[it], as well as to other creditors, Wickstrom has fraudulently transferred his assets to the Corporate Entities." (*Id.* ¶ 24.) Although almost identical to a similar claim discussed above, this allegation is not made upon information and belief. The Third Circuit has indeed allowed attempts to pierce the corporate veil to survive Rule 9(b)'s heightened pleading standard where the corporate entities were alleged to have "divert[ed] funds" between each other. *See, e.g., Teamsters*, 296 F.3d at 173. In *Teamsters*, however, the plaintiff's "enumeration of [the defendants'] actions, consisting of diverting funds, *fictitious invoices and kickbacks*, injects precision and some measure of substantiation into their allegations of fraud, consistent with Rule 9(b)." *Id.* (emphasis added) (citations omitted). Here, TCP has injected no such precision or substantiation into its claims by citing fictitious invoices related to the alleged diversion of resources. Accordingly, TCP's factual allegations regarding diversion of funds cannot survive Rule 9(b)'s heightened pleading standard.

Fundamentally, TCP has provided the Court with "little to no facts that connect the dots" between Wickstrom's alleged breach of the Agreement and the fraud, unjust enrichment, and *quantum meruit* that the Defendant Entities are allegedly involved in. *Wrist Worldwide Trading*, 2011 WL 5414307, at *6. "Plaintiff's parroting of the alter-ego factors alone is insufficient to satisfy the required pleading standards." *Id.* The Court "acknowledge[s] that it may be difficult

without discovery for a plaintiff to plead this type of claim in light of *Twombly* and *Iqbal*." *Essex*, 2010 WL 5069871, at *3. "Indeed, the Third Circuit has cautioned that '[c]ourts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud' and that 'particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.'" *Hunt*, 2012 WL 72286, at *5 (quoting *Craftmatic Secs. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989)). Nevertheless, "[a]s the Court stated in *Iqbal*, Rule 8 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Essex*, 2010 WL 5069871, at *3 (quoting *Iqbal*, 556 U.S. at 678-79).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. Plaintiff's claims against Defendants TIA Corporation, Behavioral Rehabilitation Services, Inc., and A Forever Recovery, Inc. are dismissed without prejudice.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**