**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TWIN CAPITAL PARTNERS, LLC, *Plaintiff/Counterclaim Defendant*, v. PER WICKSTROM, *Defendant/Counterclaim Plaintiff.* | Civil Action No. 20-2869 (MAS) (LHG) **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on two motions: (1) Plaintiff/Counterclaim Defendant Twin Capital Partners, LLC ("TCP") and Third-Party Defendant Salvatore Pappalardo's Motion to Dismiss the Counterclaims and Third-Party Complaint (ECF No. 23), and (2) Third-Party Defendant Richard Kwasny's Motion to Dismiss the Third-Party Complaint (ECF No. 25). Defendant Per A. Wickstrom opposed both Motions (ECF Nos. 27, 29), and TCP, Pappalardo, and Kwasny replied (ECF Nos. 28, 30). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants both Motions to Dismiss.

**I.   BACKGROUND**[1]

This matter arises out of a letter agreement ("Agreement") between TCP and Defendant Wickstrom dated November 17, 2018. (Countercl. ¶ 7, ECF No. 17.) TCP filed its Complaint on

---

[1] The Court assumes familiarity with the facts, which are provided in this Court's previous Memorandum Opinion. (ECF No. 14.) Thus, the Court includes only the facts relevant to the pending motions.

February 6, 2020 in the Monmouth County Superior Court. (Notice of Removal Ex. A, ECF No. 1-1.) On March 16, 2020, Defendants removed the action to this Court based on diversity jurisdiction. (Notice of Removal, ECF No. 1.) On November 17, 2020, this Court granted a motion to dismiss all named defendants other than Wickstrom. (*See* Mem. Op. 12, ECF No. 14.) On December 18, 2020, Wickstrom filed an Answer, Counterclaims and a Third-Party Complaint. (ECF No. 17.)

Wickstrom's counterclaims allege, generally, that TCP breached an arrangement between TCP and him. (Countercl. ¶ 3.) Wickstrom claims that TCP and its principal, Pappalardo, held TCP out as an experienced financial advisor and financial consultant. (Countercl. ¶ 8.) Wickstrom alleges "upon information and belief" that, instead, TCP either misrepresented that it had no in-house counsel or utilized the services of a disbarred attorney. (Countercl. ¶ 8.) The Agreement provides as follows:

> It is further acknowledge[d], agreed, and understood that various individuals, including in-house legal counsel for TCP, *may* provide services to [sic] on behalf of TCP. [Wickstrom] is directed to obtain [his] own professionals to represent [his] interest in any and all financial transactions.

(Letter Agreement, Am. Compl., Ex. A, ECF No. 8-1) (emphasis added).

The Agreement conditioned payment upon the ability of TCP to successfully arrange financing in the amount of $5,000,000 at a rate no greater than 2% over the prime rate and no less than a 15-year fixed term. (Countercl. ¶ 9.) The Agreement also required that if TCP was unable to perform its obligations, TCP would return the retainer fee less any expenses incurred but only up to $10,000. (Countercl. ¶ 11.)

Wickstrom alleges that TCP failed to obtain a loan as permitted by the Agreement and that TCP did not provide financial consulting, private equity/joint venture capital or portfolio

management services. (Countercl. ¶¶ 12-13.) Wickstrom alleges that, thereafter, TCP induced Wickstrom to provide additional funds with the promise of a prospective lender. (Countercl. ¶ 14.) Wickstrom claims that he subsequently demanded a refund of his retainer and the additional funds he paid to TCP, but TCP has not yet provided a refund. (Countercl. ¶ 15.) Wickstrom alleges that, instead, TCP sent an invoice to Wickstrom and also to companies not included in the transaction for the amount of $210,000 and that TCP threatened to record a lien on properties related to Wickstrom. (Countercl. ¶ 17.) Wickstrom now brings counterclaims against TCP for violations of the New Jersey Consumer Fraud Act ("CFA"), Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing. (Countercl. ¶¶ 18-44.)

The Third-Party Complaint brought against Third-Party Defendants Pappalardo and Kwasny arises out of the same set of facts. (*See* Third-Party Compl. ¶ 8.) Wickstrom alleges that Pappalardo and Kwasny are members and managers of TCP.[2] (Third-Party Compl. ¶ 9.) Wickstrom alleges that Pappalardo was the primary salesperson and executed the Agreement and that Pappalardo created the invoice for $210,000. (Third-Party Compl. ¶¶ 10, 13-14.) Kwasny, Wickstrom claims, made written demands for the sum. (Third-Party Compl. ¶ 15.) Wickstrom further alleges that Pappalardo made false representations that included that there would be a team of qualified workers, inclusive of in-house counsel, working in furtherance of the Agreement, that TCP would provide financial advisory services, private equity services and portfolio management services, and that TCP would return Wickstrom's retainer if TCP failed to achieve its obligations

---

[2] The Court notes that Wickstrom inconsistently alleges the membership of Twin Capital Partners, LLC. (*Compare* Third-Party Compl. ¶ 2 ("Third-Party Plaintiff Pappalardo is a resident of Monmouth County, New Jersey. Pappalardo is the sole member of TCP"), *with* Opp'n to TCP & Pappalardo's Br. 7, ECF No. 27 ("Pappalardo and Kwazny [sic] are members and managers of TCP."). The Court orders Plaintiff to plead the names and citizenship of its' members by e-filed submission by **October 14, 2021.**

as set forth in the Agreement. (Third-Party Compl. ¶ 20; Countercl. ¶¶ 22-24.) Wickstrom now brings the Third-Party Complaint against Pappalardo and Kwasny and alleges a violation of the CFA. (Third-Party Compl. ¶¶ 8-23.)

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[3] requires only "a short and plain statement" of the claim showing that "the pleader is entitled to relief in order to 'give the defendant fair notice of what the. . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41. 47 (1957)). For claims of fraud, however, Rule 9(b) imposes a heightened pleading standard. *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999). A "plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)). This standard requires that a plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* Furthermore, where a plaintiff sues multiple defendants for fraud, "[a] plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." *Naporano Iron*, 79 F. Supp. 2d at 511.

A district court conducts a three-part analysis when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir.

---

[3] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

4

2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir, 2008)). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). The "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III. DISCUSSION

### A. Wickstrom Fails to Allege CFA Claims.

TCP and Third-Party Defendants Pappalardo and Kwasny move to dismiss Wickstrom's claims that they violated New Jersey's Consumer Fraud Act. TCP and Pappalardo, together, argue that Wickstrom's CFA claims are (1) insufficiently pled, (2) barred by the economic loss doctrine, and (3) unsustainable as a matter of law because the procurement of financing does not fall within the CFA. (TCP & Papalardo's Br. 1.) Kwasny echoes that the CFA claims against him are insufficiently pled and that, in any event, Kwasny is not a proper party to this action. (Kwasny's Br. 1-2, ECF No. 25-1.) Wickstrom argues that the Counterclaims and Third-Party Complaint "far exceed [] the minimum pleading requirements imposed upon him." (Opp'n to TCP & Pappalardo's Br. 10, ECF No. 27; Opp'n to Kwasny's Br. 9, ECF No. 29.)

The CFA "is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 550 (N.J. 1997)). New Jersey courts have repeatedly emphasized that "the CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Id.* (quoting *Marascio v. Campanella*, 689 A.2d 852, 856-57 (N.J. App. Div. 1997)). The CFA is "remedial legislation which should be construed liberally." *Real v. Radir Wheels, Inc.*, 969 A.2d 1069, 1075 (N.J. 2009) (quoting *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1079 n.1 (N.J. 2007)). The CFA, however, "'is not intended to cover every transaction that occurs in the marketplace[,]' but, rather, '[i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.'" *Cetel*, 460 F.3d at 514 (quoting *Arc Networks, Inc. v. Gold Phone Card Co.*, 756 A.2d 636, 637 (N.J. Super. Ct. Law Div. 2000).

A party seeking relief under the CFA must adequately allege: "(1) an unlawful conduct; (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 103 (3d Cir. 2013) (quoting *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1115 (N.J. 2011)). Unlawful conduct includes, "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate. . . ." N.J. Stat. Ann. § 56:8-2. Where a CFA claim is based on a breach of contract, "'substantial aggravating circumstances' must be present." *Galli v. Key Motorcars, LLC*, No. L-4473-07, 2012 WL 1605222, at *6 (N.J. App. Div. May 9, 2012) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)).

6

The parties disagree whether Rule 8(a) or Rule 9(b) applies to Wickstrom's CFA claims against TCP, Pappalardo, and Kwasny. TCP, Pappalardo and Kwasny all argue that Wickstrom's CFA claims are insufficiently pled under Rule 9(b). (TCP & Pappalardo's Br. 5; Kwasny's Br. 5.) TCP and Pappalardo aver that under Rule 9(b), Wickstrom's Counterclaims and Third-Party Complaint insufficiently plead that (1) TCP and Pappalardo refused to refund the retainer payment, (2) TCP and Pappalardo demanded amounts in excess of the Agreement, (3) TCP and Pappalardo did not provide services required under the contract, and (4) Wickstrom was promised in-house counsel would provide him services. (TCP & Pappalardo's Br. 6-9.) Wickstrom counters that the CFA claims are properly pled and that the "[m]ovants have attempted to convert a motion to dismiss into one for summary judgment thus challenging Wickstrom to actually prove his case at this juncture without either being able to proceed with discovery or to submit evidence." (Opp'n to TCP & Pappalardo's Br. 9.) Wickstrom further argues that his "pleading more than suffices to meet the minimal pleading standards established under [Rule 8(a)]." (*Id.* 12.)

The Third Circuit instructs that CFA claims sounding in fraud are subject to the Rule 9(b) standard. *See, e.g., Frederico*, 507 F.3d at 202-03 (applying Rule 9(b) standard to CFA claims). Some CFA claims, however, may not necessarily sound in fraud. Courts in this District have ruled that "unconscionable commercial practice claims are distinct from NJCFA claims sounding in fraud, and so the heightened pleading standard of Rule 9(b) does not apply." *Katz v. Live Nation, Inc.*, No. 09-3740, 2010 WL 2539686, at *5 (D.N.J. June 17, 2010); *See also Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525-27 (D.N.J. 2008) (applying both Rule 9(b) and Rule 8(a) standard to CFA claims). *But see Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529 (D.N.J. 2011) ("It is well-established that NJCFA claims must meet the heightened pleading requirements of [Rule] 9(b).").

In any event, here, the Court finds that Plaintiff's CFA claims against TCP, Pappalardo and Kwasny "sound[] in fraud." *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 419 (D.N.J. 2016), *as amended* (May 31, 2016) (citing *Frederico*, 507 F.3d at 200). In the CFA claim against TCP, Wickstrom alleges that TCP falsely represented that it had a "qualified team" with "licensed professional[s] [that] would be overseeing and shepherding" the Agreement, including in-house counsel. (Countercl. ¶¶ 21-22.) Wickstrom claims that instead, TCP employed Kwasny to work in furtherance of the Agreement, who Wickstrom alleges upon "information and belief," is a disbarred attorney. (Third-Party Compl. ¶ 11; Countercl. ¶ 8.) Wickstrom further alleges that TCP falsely represented that "it would provide financial advisory services, private equity services and portfolio management services." (Countercl. ¶ 23.) Moreover, Wickstrom alleges that in discussions between Pappalardo and Wickstrom, he was promised that TCP would refund Wickstrom's retainer if TCP failed to achieve its obligations as set forth in the Agreement. Instead, Wickstrom argues, TCP "failed to arrange a loan as defined by the Agreement, demanded funds beyond the terms of the Agreement, failed to return the retainer, and then provided a purposefully false and misleading invoice while threatening to place a lien on Wickstrom (and his companies') properties." (Countercl. ¶ 24.) Wickstrom incorporates these allegations in the Third-Party Complaint, (Third-Party Compl. ¶ 8), and further claims that Kwasny made written demands for falsified sums. (Third-Party Compl. ¶ 15.)

Applying Rule 9(b) scrutiny to Wickstrom's CFA claims, the Court finds that Wickstrom has failed to properly allege a claim against TCP, Pappalardo or Kwasny. Wickstrom offers no facts to evince the "circumstances of the alleged fraud with sufficient particularity[.]" *Frederico*, 507 F.3d at 200. Wickstrom does not allege, among other deficiencies, when or who at TCP "induced" him to provide additional funds with the promise of a prospective lender, when he paid

8

TCP, when he was promised that the Agreement would be helped along by in-house counsel, when he demanded a refund of the funds he paid or who at TCP falsely represented that it had in-house counsel. Moreover, Wickstrom does not even allege any specific facts that Pappalardo was found to have violated the CFA previously, which he alleges "upon information and belief." (Countercl. ¶ 16.) Wickstrom's claims against TCP clearly do not meet the Rule 9(b) pleading burden. What's more, Wickstrom's Third-Party Complaint alleges a CFA violation arising out of the same set of facts, and equally does not meet the heightened pleading standard. *See Frederico*, 507 F.3d at 200; *see also Laing v. Am. Strategic Ins. Corp.*, No. 14-1103, 2014 WL 4953250, at *4 (D.N.J. Oct. 1, 2014) (dismissing complaint only alleging "general misrepresentations or deceitful acts" because "the allegations [did] not provide sufficient detail regarding the purported fraudulent acts of [the party] so as to satisfy 9(b)"). The Court, accordingly, dismisses the CFA counts against TCP, Pappalardo and Kwasny without prejudice.[4]

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

Count 3 of Wickstrom's Counterclaims alleges a breach of the covenant of good faith and fair dealing against TCP. Wickstrom alleges that "[b]y failing to provide the requisite services only in an effort to retain the deposit moneys, TCP breached its duty of good faith." (Countercl. ¶ 43.) TCP argues that Wickstrom "cannot maintain a breach of the implied covenant claim because he did not plead any misconduct distinct from a breach of contract and otherwise failed to plead all of the elements of a breach of the implied covenant of good faith and fair dealing cause of action." (TCP & Pappalardo's Br. 14.)

New Jersey law provides that "[a] covenant of good faith and fair dealing is implied in every contract." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). "A party to a

---

[4] Because the Court finds that Wickstrom's CFA claims do not meet the heightened pleading standard, the Court declines to address TCP, Pappalardo and Kwasny's remaining arguments.

9

contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Multicultural Radio Broad., Inc. v. Korean Radio Broad., Inc.*, No. 15-1961, 2015 WL 13229231, at *3 (D.N.J. Nov. 20, 2015) (quoting *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000)). A breach of the covenant of good faith and fair dealing, however, "must not arise out of the same conduct underlying an alleged breach of contract action." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013) (citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1261-62 (N.J. 2002)). In other words, "the conduct alleged to be a breach of the implied covenant of good faith and fair dealing must be *distinct* from the conduct alleged to constitute a breach of contract." *Ricketti v. Barry*, No. 13-6804, 2015 WL 1013547, at *7 (D.N.J. Mar. 9, 2015) (citations omitted) (emphasis added).

Here, Wickstrom's breach of the covenant of good faith and fair dealing claim against TCP must be dismissed as the claim arises out of the same conduct as the breach of contract claim against TCP. Wickstrom alleges a breach of the implied covenant of good faith because TCP, "fail[ed] to provide the requisite services only in an effort to retain the deposit moneys. . . ." (Countercl. ¶ 43.) This is nearly identical to Wickstrom's breach-of-contract claim. (*See* Countercl. ¶ 38 ("TCP failed to provide the services it was obligated for under its agreement with Wickstrom and then failed and refused to refund the retainer agreement thus materially breaching the Agreement.")). It is settled that an implied covenant claim cannot be sustained if it is based on the same conduct that underlies a breach-of-contract claim. *See Cedar Holdings, LLC v. Menashe*, No. 16-7152, 2017 WL 1349321, at *3 (D.N.J. Apr. 7, 2017) ("A claim for breach of the implied covenant is duplicative of a breach of contract claim when allegations of bad faith all relate to actions that form the basis of the breach of contract claim."); *see also Cnty. of Essex v. Aetna Inc.*,

10

No. 17-13663, 2018 WL 6584920, at *5 (D.N.J. Dec. 13, 2018) (dismissing implied covenant of good faith claim where "the allegations underlying both claims . . . are nearly identical."), *on reconsideration*, No. 17-13663, 2019 WL 1951073 (D.N.J. May 1, 2019). Wickstrom's claim for breach of the implied covenant of good faith and fair dealing is therefore dismissed without prejudice.

### IV.   CONCLUSION

For the foregoing reasons, the Court grants the Motions to Dismiss. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**