**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TWIN CAPITAL PARTNERS, LLC, <br><br> Plaintiff, <br> v. <br><br> PER A. WICKSTROM, et al., <br><br> Defendants. | Civ. A. No. 3:20-cv-02869 (GC) (LHG) <br><br> **OPINION** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court upon two motions to dismiss Defendant and Counterclaim/Third-Party Plaintiff Per A. Wickstrom's ("Wickstrom") amended pleadings. Wickstrom's original Counterclaim and Third-Party Complaint (*see* ECF No. 17) were determined to be deficient and dismissed without prejudice in this Court's September 30, 2021 Memorandum Opinion (*see* Mem. Op., ECF No. 31). The first motion is Plaintiff/Counterclaim-Defendant Twin Capital Partners, LLC's ("TCP") and Third-Party Defendant Salvatore Pappalardo's ("Pappalardo") (collectively, "Movants") motion to dismiss Wickstrom's First Amended Counterclaim (the "FACC") and First Amended Third-Party Complaint (the "FATPC") (*see* TCP & Pappalardo's Second Mot. to Dismiss ("TCP's Second Mot."), ECF No. 47). The second motion, advanced by *pro se* Third-Party Defendant Richard Kwasny ("Kwasny"), seeks dismissal of the FATPC as against him (*see* Kwasny's Second Mot. to Dismiss ("Kwasny's Second Mot."), ECF No. 48). Wickstrom filed separate opposition to each of these motions. (*See* Wickstrom's Opp'n to TCP & Pappalardo's Second Mot. to Dismiss ("Wickstrom's TCP Opp'n"), ECF No. 55; Opp'n to Kwasny's Second Mot. to Dismiss ("Wickstrom's Kwasny Opp'n"), ECF No. 56).

Movants elected to reply, but Kwasny declined.  (*See* TCP & Pappalardo's Reply to Wickstrom's Opp'n ("TCP Reply"), ECF No. 57.)

The Court has reviewed the parties' submissions and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1.  For the reasons set forth below, and for other good cause shown, the Court grants TCP's and Pappalardo's motion with respect to Wickstrom's claim for failure to maintain proper licensure. The Court denies TCP's and Pappalardo's motion as to the remaining claims.  In addition, the Court denies Kwasny's motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

As the parties are intimately familiar with the facts and procedural background of this matter, the Court incorporates the portions of its prior opinions outlining the factual background and procedural history.  In short, this matter arises from an agreement (the "Agreement") entered into by TCP and Wickstrom on or about November 11, 2018.  (ECF No. 14.)  Under the terms of the Agreement, TCP agreed to act on behalf of Wickstrom "on an exclusive basis as its financial advisor, with respect to certain mortgage financing, financial consulting, private equity/joint venture capital, and portfolio management, with respect to a line of credit/asset based lending for properties listed on Schedule A of the Agreement." *Id.*

Under the Agreement, TCP agreed to advise Wickstrom in his attempt to secure $5,000,000 in financing.  *Id.* In exchange for its services, TCP was to receive "a transaction fee equal to two percent of the gross proceeds of any financing on the first $5,000,000 of new financing." *Id.*  The transaction fee, minus a $24,000 retainer, equaled $210,000.  *Id.*  TCP filed suit against Wickstrom and Defendants Behavioral Rehabilitation Services, Inc., TIA Corporation, and A Forever

Recovery claiming that it performed its obligations under the Agreement, but that Wickstrom failed to pay the remainder of the fees under the Agreement. *Id.*

On March 16, 2020, Defendants removed this matter to this Court from the Superior Court of New Jersey, Monmouth County. (ECF No. 1.) On November 17, 2020, the Court granted Defendants' Motion to Dismiss Plaintiff's Amended Complaint with respect to all Defendants other than Wickstrom. (ECF No.13.) On December 18, 2020, Wickstrom filed an Answer and Counterclaim against TCP as well as a Third-Party Complaint against Third-Party Defendants Kwasny and Pappalardo. (ECF No. 17). On February 19, 2021, TCP and Pappalardo filed a motion to dismiss Counts One and Three of the Counterclaim Complaint and the entirety of the Third-Party Complaint against Pappalardo. (ECF NO. 23). Kwasny also filed a Motion to Dismiss the Third-Party Complaint (ECF No. 25).

On September 30, 2021, the Court entered an Opinion and Order granting TCP and Pappalardo's motion to dismiss two of Wickstrom's counterclaims and the Third-Party Complaint in its entirety. (ECF Nos. 31 and 32.) The Court also granted Kwasny's motion to dismiss the Third-Party Complaint as concerning him (*see* Kwasny's First Mot. to Dismiss, ECF No. 25). Accordingly, counts one and three of Wickstrom's Counterclaim were dismissed (*see* ECF No. 17), and his Third-Party Complaint was dismissed in its entirety (*see id.*), for failure to state a claim. (*See* Mem. Op. & Order, ECF Nos. 31 & 32, respectively.) On December 6, 2021, Wickstrom filed an Amended Third-Party Complaint against Kwasny and Pappalardo and Amended Counterclaims against TCP. (ECF No. 43). The instant motions followed.

In their present motions, Movants assert that Wickstrom's amended pleadings still fail to satisfy Rule 9(b). In addition, Movants argue that Wickstom's claims are barred by the economic

loss doctrine.  Movants further argue that Wickstrom fails to state a claim for violation of the New Jersey broker licensure statute.  The Court will examine each, in turn.

## II.    CONSUMER FRAUD ACT CLAIM AMENDMENTS

### A.    Sufficiency of Amendments Under Rule 9(b)

The Court previously determined that Wickstrom had failed to allege sufficient facts to support a claim for violations of the New Jersey Consumer Fraud Act (the "CFA"), N.J. Stat. Ann. § 56:8-2, *et seq.*, to meet the elevated standard pursuant to Rule 9(b) (*see* Mem. Op. 5-9).[1]  The Court finds that Wickstrom has now pled sufficient facts to satisfy the deficiencies the Court previously identified with respect to the representation concerning in-house counsel and the alleged demand for additional funds, as discussed below.

### 1.    Representation Concerning In-House Counsel

Movants argue that Wickstrom's claim under the New Jersey CFA must be dismissed because his amendments fail to provide the specificity required under Rule 9(b).  (*See* TCP's Second Moving Br. 6-8, ECF No. 47-1.)  They argue that Wickstrom insufficiently alleges misrepresentation in formation of the contract because the governing Agreement "specifically disclaims this alleged misrepresentation" by stating:

> It is further acknowledged, agreed, and understood that various individuals, including in-house legal counsel for TCP, may provide services to [sic] on behalf of TCP.  The Borrower is directed to obtain its/their own professionals to represent its/their interest in any and all financing transactions.

---

[1] The Court also decided that Wickstrom's claim for breach of the implied covenant of good faith and fair dealing could not proceed because New Jersey law requires that the conduct alleged to constitute breach of the implied covenant of good faith and fair dealing arise from circumstances distinct from the breach of contract claim (*see* Mem. Op. 9-11).  Wickstrom did not attempt to cure the identified deficiencies or otherwise replead his cause of action for breach of the implied covenant in his amended pleadings.  (*See generally* Am. Answer, FACC & FATPC, ECF No. 43.)

(*See id.* at 6 (quoting Agreement, Cert. of Stefan Erwin, Esq. (hereinafter "Erwin Cert.") Ex. B, ECF No. 47-2); *see also* Agreement, Wickstrom's First Am. Answer, FACC & FATPC Ex. A, ECF No. 43-1.)  In response, Wickstrom asserts that the alleged inducements that led him to enter into the Agreement include the part of a provision promising a "team approach," including assistance of in-house counsel in the oversight of his assets.  (*See* Wickstrom's TCP Opp'n Br. 12-13, ECF No. 55.)  However, whether the contract provision "specifically disclaims this alleged misrepresentation," as Movants assert, or indeed acted as an inducement, as Wickstrom alleges, appears to be a factual question not appropriate for determination on a motion to dismiss.[2]  *See Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015) (citing *Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010)) ("Whether a business practice is unfair is a question for the jury[.]").

---

[2] Because the parties' relationship appears to be governed by a writing, the Court must take care to decipher whether the writing provides disposition as a matter of law.  "When a CFA claim is based on a valid, written contract, 'a court will dismiss [the] claim' if the conduct alleged is 'expressly authorized' by the terms of that contract."  *Marshall v. Verde Energy USA, Inc.*, No. 18-1344, 2020 WL 5905072, at *7 (D.N.J. Oct, 5, 2020) (quoting *Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015)).  "Whether a business practice is unfair is a question for the jury, but if the claim is founded on written statements, then the court must make a legal decision whether the practice is unlawful in light of the writings."  *Urbino*, 2015 WL 4510201, at *3 (citing *Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010)).  Here, Wickstrom alleges lack of mutual assent in formation of the contract, calling its validity into question.  What's more, the terms at issue, specifically, that "in-house legal counsel for TCP may provide services," and that the "Retainer Fee", *i.e.*, the sum "in the amount of $24,000 which shall be paid immediately upon execution of this agreement," "is refundable only in the event TCP does not perform under the terms contained herein[,]" do not expressly authorize the alleged unlawful conduct, *e.g.*, employing a disbarred attorney advertised as in-house counsel.  Nor is it definitive as to whether the assistance of counsel was permissive or truly promised during negotiations.  (*See* Agreement, Wickstrom's First Am. Answer, FACC & FATPC Ex. A, ECF No. 47-1.)  At this stage, discovery is required to determine whether Pappalardo's statements were true "misrepresentations of fact actionable under the CFA or mere puffing about a product or company that will not support relief."  *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003) (citing *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991)).

As to the sufficiency of this allegation itself, Movants argue that Wickstrom "fails to allege when he was told that he would be provided in-house counsel contrary to the Contract's terms," and they claim his general allegations fail to meet the standard.  (*See* TCP's Second Moving Br. 7.)  The Court previously found Wickstrom's prior inducement allegation to be inadequate because Wickstrom did not allege "when he was promised that the Agreement would be helped along by in-house counsel" or "who at TCP falsely represented that it had in-house counsel."  (Mem. Op. 8-9.)  In an attempt to address this, Wickstrom's amended pleading adds the following factual allegation:

> Wickstrom retained the services of TCP believing that it had a qualified team which included in-house counsel.  This representation was made by Pappalardo in discussions leading up to the execution of the November 17, 2018 Agreement and was a material inducement as it provided Wickstrom with assurances comfort [sic] that a licensed professional would be overseeing and shepherding his project with TCP.

(*Compare* FACC ¶ 19 & FATCP ¶ 19, *supra*, *with* CC ¶ 25, ECF No 17 ("By stating that Wickstrom's matter would be supervised with 'in house counsel,' Wickstrom was of the believe [sic] that he would have a licensed attorney as part of the qualified team.").)

As the Court directed, Wickstrom was required to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged," and that in doing so, he was required to "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  (Mem. Op. 4 (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007 (alteration in original)).)  The pleading must also "identify the speaker of allegedly fraudulent statements." *Klein v. Gen. Nutrition Cos.*, 186 F. 3d 338, 345 (3d Cir. 1999).

Under the CFA, "[u]nlawful practices fall into three categories: affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507 F. 3d at 202 (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462-65 (N.J. 1994)). "An affirmative representation is 'one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase.'" *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 373 (D.N.J. 2015) (quoting *Mango v. Pierce-Coombs*, 851 A.2d 62, 69 (N.J. Super. Ct. App. Div. 2004)). "To satisfy the heightened pleading standard for a fraudulent affirmative act, a plaintiff need not [necessarily] plead the particular date, time or place of the fraud [as long as alternative means of injecting precision are utilized, *see Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 385 (D.N.J. 1999)]." *Mladenov*, 124 F. Supp. at 373. "Instead, the plaintiff must indicate at the very least who made the material misrepresentation giving rise to the claim and what specific representations were made." *NN&R, Inc. v. One Beacon Ins. Grp.*, 362 F. Supp. 2d 514, 518 (D.N.J. 2005) (citing *Mardini*, 92 F. Supp. at 385).

Here, Wickstrom's additional allegation is sufficient to cure the previously identified deficiency. Wickstrom asserts that Pappalardo affirmatively represented that an attorney was a member of the TCP team that would be managing his finances, that this person would be assisting in the care of his assets, and that these statements were made during negotiations prior to the execution of the Agreement. (*See* FACC ¶ 29; *see* FATPC ¶ 29.) At this stage, the Court's inquiry "is not whether the plaintiff[] will ultimately prevail in a trial on the merits, but whether [he] should be afforded an opportunity to offer evidence in support of [his] claims." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (quoting *In re Rockefeller Ctr. Props. Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002)). Wickstrom has alleged sufficient details to put Movants and Kwasny on notice, and to permit him to offer evidence in

support of his assertion that Pappalardo induced him to engage TCP's services because the team was guided by in-house counsel, but that this statement in fact was false.[3]

### 2. Alleged Demand for Additional Funds

Movants next argue that "[c]oncerning a demand for additional engagement funds, Wickstrom has again failed to respond to the Court's documented concerns." (TCP's Second Moving Br. 7.) Movants state that Wickstrom fails to plead specific allegations "regarding the alleged additional payment such as when the payment was demanded, when the payment was made, the amount of the payment, the reason for the payment, the method of communication surrounding the demand, or any other detail to meet the heightened fraud pleading standard." (*Id.* at 8.) In response, Wickstrom asserts: "[a]dressing the Court's prior concerns, Wickstrom[] amended his pleading to clarify that within ninety days of the entry of the engagement [A]greement, Pappalardo threatened to cease working unless additional funds beyond that in the Agreement were paid to TCP." (Wickstrom's TCP Opp'n Br. 13.) He contends that his amendment "established the date, the actor, and the exact amount coerced ($26,000.00)" which sufficiently corrected the deficiencies stated in the Court's Opinion to survive a Rule 12(b)(6) challenge. (*Id.*)

In its prior Opinion, the Court found a lack of specificity because Wickstrom failed to allege "when or who at TCP 'induced' him to provide additional funds with the promise of a prospective lender, when he paid TCP," and "when he demanded a refund of the funds he paid[.]" (Mem. Op. 8-9.) The amendments at issue read as follows:

> In TCP's November 17, 2018 Agreement and in discussions by
> Pappalardo to Wickstrom leading up thereto, TCP promised to

---

[3] Wickstrom alleges that the statements were false. (*See* FACC ¶ 30 & FATPC ¶ 20 (asserting that Kwasny is a disbarred attorney) & FACC ¶ 31 & FATPC ¶ 21 (stating that "no services were rendered or contemplated to be rendered").

return Wickstrom's retainer if TCP failed to achieve its obligations as set forth in the Agreement. Despite the agreed upon terms under the Agreement, within ninety days of entering into the original Agreement (which required the payment of $24,000.00 by Wickstrom), [sic] threatened to stop working unless Wickstrom provided an additional $26,000.00. Being told that the loan arrangement was imminent and faced with losing his funds having already been deposited with TCP if it was not paid, Wickstrom forwarded the $26,000.00[] demanded by Pappalardo to TCP.

(*Compare* FACC ¶¶ 34-35 & FATPC ¶¶ 24-25, *supra*, with CC ¶ 24[4].)

The Court is satisfied that these amendments are sufficiently curative. *See In re Rockefeller Ctr. Props., Inc.*, 311 F.3d at 216 (quoting *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). Wickstrom has amended to plead sufficient facts to provide adequate notice to defendants of the unlawful conduct alleged. *See Frederico*, 507 F.3d at 200. The Court's prior Opinion determined that Wickstrom had inadequately pled "when or who at TCP 'induced' him to provide additional funds with the promise of a prospective lende[r]." (*See* Mem Op. 8.) Wickstrom's amended pleadings add that promises were made by "Pappalardo to Wickstrom." (*See* FACC ¶ 34 & FATPC ¶ 24.) Wickstrom further alleges that "Pappalardo was the individual who made the majority of direct representations to Wickstrom leading up to the execution of the November 17, 2018 Agreement as well as the induvial [sic] who demanded the additional funds

---

[4] In contrast, the prior allegation reads:

In TCP's Agreement and in concurrent discussions made by Pappalardo to Wickstrom, TCP promised to return Wickstrom's retainer if TCP failed to achieve its obligations as set forth in the Agreement. This representation was materially false as TCP failed to provide the financial and advisory services, failed to arrange a loan as defined by the Agreement, demanded funds beyond the terms of the Agreement, failed to return the retainer, and then provided a purposefully false and misleading invoice while threatening to place a lien on Wickstrom (and his companies') properties.

(CC ¶ 24; *see also* TPC ¶ 8 (incorporating the factual allegations in the CC), ECF No. 17.)

from Wickstrom in order to continue working on his matter." (*See* FATPC ¶ 12.)  In addition, the prior opinion indicated that Wickstrom had not stated "when he paid TCP." (*See* Mem. Op. 8-9.) Wickstrom amended his claims to add that he paid $24,000.00 at contract execution and $26,000.00 immediately upon further request (*see* FACC ¶ 47 ("Upon execution of the Agreement, Wickstrom paid said $24,000.00."); *see* FACC ¶¶ 20-21 ("within ninety days from the payment of the initial $24,000.00 . . . Wickstrom gave in to Pappalardo's coercive measures and paid the demanded funds"); *see* FATPC ¶ 8 (incorporating the facts averred in the FACC); *see* FATPC ¶ 25 (alleging that within ninety days of entering into the agreement and tendering the $24,000.00 engagement sum, . . . Wickstrom forwarded the [$26,000.00] funds demanded by Pappalardo to TCP").  Though he does not add the exact date and time "when he demanded a refund of the funds he paid" (*see* Mem. Op. 9), he avers that he "has demanded the return of his funds advanced to TCP, but TCP has refused to return the same" (*see* FACC ¶ 25 & FATPC ¶ 33), which, in the context of the greater specificity alleged, is sufficient at this stage.

### B.    Substantial Aggravating Circumstances

Movants next contend that "even if the Court could glean some particularity out of these general allegations, the [FACC] still fails to plead 'substantial aggravating circumstances' foreclosing a CFA claim as a matter of law." (TCP's Second Moving Br. 8.)  Wickstrom responds that "the heightened obligations only occur where there is a simple breach of contract claim rather than one which has, as part of it, a misrepresentation as to claims," but that even if this were not the case, "the heightened facts are present."  (Wickstrom's TCP Opp'n Br. 13.)  In its prior Opinion, the Court noted that "[w]here a CFA claim is based on a breach of contract, 'substantial aggravating circumstances' must be present." (Mem. Op. 6 (quoting *Galli v. Key Motorcars, LLC*, No. L-4473-07, 2012 WL 1605222, at *6 (N.J. Super. Ct. App. Div. May 9, 2012)).)

"In New Jersey, 'a breach of warranty, or any breach of contract is not *per se* unfair or unconscionable and a breach of warranty alone does not violate a consumer protection statute.'" *Petri Paint Co., Inc. v. OMG Ams., Inc.*, 595 F. Supp. 2d 416, 421 (D.N.J. 2008) (quoting *Cox*, 647 A.2d at 462). "Rather, to succeed on a consumer fraud claim, a plaintiff must demonstrate 'substantial aggravating circumstances,' such as the existence of bad faith or lack of fair dealing, sufficient to constitute an 'unconscionable business practice.'" *Id.* (citing *Cox*, 647 A.2d at 462). "Moreover, when a CFA claim is based on a breach of contract, [the plaintiff] must allege a 'substantial aggravating circumstance,' demonstrating that the defendant's behavior 'stands outside the norm of reasonable business practice in that it will victimize the average consumer.'" *Marshall*, 2020 WL 5905072, at *7 (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997)).

The facts alleged in Wickstrom's amended pleading are sufficient to rise to the level of unconscionable conduct, and therefore constitute substantial aggravating circumstances. Wickstrom alleges that Pappalardo solicited him and induced him to enter into a binding contract based upon false statements that Kwasny, the in-house counsel, was a licensed attorney (*see* FACC ¶¶ 10-12, 29-30 & FATPC ¶¶ 19-20); that TCP and Pappalardo, with the assistance of Kwasny, would provide the contracted for services (FACC ¶¶ 30-31 & FATPC ¶¶ 20-21); that TCP, Pappalardo, and Kwasny did not provide the services or otherwise perform their obligations under the contract, and never intended to (FACC ¶¶ 31, 41 & FATPC ¶ 21); and that Wickstrom was then relieved of the significant sums he paid in compliance with the terms of the Agreement through bad faith and fraud (FACC ¶¶ 20-21, 42, 47 & FATPC ¶¶ 31, 33). The commercial practices alleged do not constitute "[m]ere customer dissatisfaction" with services rendered. Here, Wickstrom does not merely allege failure to perform. Rather, his assertions "necessarily entail[]

a lack of good faith, fair dealing, and honesty[,]" resulting from the misrepresentations (*see, e.g.,* FACC ¶ 12 ("Had Wickstrom known that TCP utilized the services of a suspended and disbarred attorney, he would have elected to utilize the services of another company.")). *See, e.g., Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 168 (3d Cir. 1998) (citing *Cox,* 647 A.2d at 462 & *Turf Lawnmower Repair, Inc. v. Bergen Rec. Corp.,* 655 A.2d 417, 430 (N.J. 1995)); *see also* N.J. Stat. Ann. § 56:8-2. For these reasons, Wickstrom has sufficiently alleged substantial aggravating circumstances to maintain his claims under the CFA.

### C.    Economic Loss Doctrine

Movants next advance the argument that Wickstrom's claims are barred by the economic loss doctrine because "all the fraudulent practices alleged by [Wickstrom] in support of his fraud and CFA claims are governed by, or arise out of, the Contract." (TCP's Second Moving Br. 10; *see* FACC ¶¶ 26-37, 41-42 & FATPC ¶¶ 8-27, 31-35.) Wickstrom responds that the services at issue, namely financial advice and consulting, and "mortgage/brokerage capital raising services," are professional services that do not fall under the umbrella of those contemplated by the CFA, and thus are not barred. (Wickstrom's TCP Opp'n Br. 16.) Wickstrom argues that the CFA provides that its protections are intended to be cumulative to other rights in law or in equity. (*See id.* (citing N.J. Stat. Ann. § 56:8-2.13).)

"The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'" *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604, 618 (3d Cir. 1995)). "In other words, whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *Chen v. HD Dimension Corp.,* No. 10-863, 2010

WL 4721514, at *8 (D.N.J. 2010) (quoting *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, No. 07-321, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008)).  "An NJCFA claim is not barred by the economic loss doctrine and can be asserted alongside a breach of contract claim when a plaintiff alleges fraud in the inducement of the contract." *Lukacs v. Purvi Padia Design LLC*, No. 21-19599, 2022 WL 2116868, at *5 (D.N.J. June 13, 2022) (citing *Lith. Com. Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 608 (D.N.J. 2002) & *Barton v. RCI, LLC*, No. 10-3657, 2011 WL 3022238, at *7 (D.N.J. July 22, 2011) (finding NJCFA claim not precluded by economic loss doctrine when plaintiff alleged "pre-contractual misrepresentations")).  "To [apply the economic loss doctrine to a plaintiff's NJCFA claim] would foreclose plaintiffs from seeking special tort remedies specifically allowed by the New Jersey legislature." *Lith. Com. Corp.*, 219 F. Supp. 2d at 608.  Thus, "a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *Chen*, 2010 WL 4721514, at *8 (citing *Metex Mfg. Corp. v. Manson*, No. 05-2498, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008) (economic loss doctrine did not bar fraudulent inducement claim) & *Unifoil Corp. v. Cheque Printers & Encoders, Ltd.*, 622 F. Supp. 268, 271 (D.N.J. 1985) (explaining that this district has "construed the law of New Jersey to prohibit fraud claims when the fraud contemplated by the plaintiff does not seem to be extraneous to the contract, but rather on fraudulent performance of the contract itself").

Here, Wickstrom's CFA claims are based elementally in inducement and, therefore, are not barred by the economic loss doctrine.  Dismissal on these grounds at this stage of the litigation is, therefore, inappropriate.

D.    **New Jersey Real Estate Brokerage Licensure Compliance**

In his amended pleading, Wickstrom relies on N.J. Stat. Ann. § 45:15-3, which prohibits any,

> person, firm or corporation who, for a fee, commission or other valuable consideration, or by reason of a promise or reasonable expectation thereof, offers or attempts or agrees to negotiate a loan secured or to be secured by mortgage or other encumbrance upon or transfer of any real estate for others

to engage "directly or indirectly in the business of a real estate broker, broker-salesperson, or salesperson, temporarily or otherwise, and no person shall advertise or represent himself as being authorized to act as a real estate broker, broker-salesperson, or salesperson" without a license to do so, *see id.* § 45:15-1. (*See* FACC ¶ 38 & FATPC ¶ 28.)  Wickstrom alleges that "TCP and Pappalardo are each unlicensed by the State of New Jersey[,]" and that "failure to be properly licensed is a violation under the Act." (*See* FACC ¶¶ 39-40 & FATPC ¶¶ 29-30 (as to Pappalardo).)

Movants argue that Wickstrom does not plead the citizenship of the properties, and therefore, "as this transaction arises from undisclosed properties involving a Michigan resident, executed in an unpled location, Wickstrom has failed to allege sufficient facts to indicate that a New Jersey Brokerage license is required." (TCP's Second Moving Br. 14.)

This cause of action seems outside of that contemplated by the legislature.  The statute, in relevant part, bars initiation of an action under the provision cited by Wickstrom unless Wickstrom is able to demonstrate that he was a licensed real estate broker at the time of the alleged violation. *See* N.J. Stat. Ann. § 45:15-3.  Specifically, under the provision entitled, "**Definitions; licensure as an element of a cause of action**," the law provides:

> No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in R.S. 45:15-1, et. seq. without alleging and proving that he was a duly

14

licensed real estate broker at the time the alleged cause of action arose.

No person claiming to be entitled to compensation as a salesperson or broker-salesperson for the performance of any of the acts mentioned in R.S. 45:15-1 et seq. shall bring or maintain any action in the courts of this State for the collection of compensation against any person, firm, partnership, or corporation other than the licensed broker with whom the salesperson or broker-salesperson was employed or contracted at the time the alleged cause of action arose and no action shall be brought or maintained without the claimant alleging and proving that he was a duly licensed real estate salesperson or broker-salesperson at the time the alleged cause of action arose.

N.J. Stat. Ann. § 45:15-3.

"The purpose of th[e] act is to protect consumers by excluding 'undesirable, unscrupulous and dishonest persons . . . from the real estate business.'" *Kazmer-Standish Consultants, Inc. v. Schoeffel Instruments Corp.*, 445 A.2d 1149, 1151 (N.J. 1982) (quoting Statement to Assembly Bill 143 (1921)). The New Jersey Supreme Court has explained that "[u]nless licensed, brokers may not bring an action in the courts to recover a real estate commission." *Id.* (quoting Statement to Assembly Bill 143 (1921)). And while the Third Circuit, applying N.J. Stat. Ann. § 45:15-3, recalled that "[u]nder *Kazmer*, a business broker [who is unlicensed to sell real estate] may collect compensation for his role in the sale of a business that includes the transfer of a real estate interest if, according to the terms of the agreement or from surrounding circumstances, that interest is divisible from the remainder of the sale[,]" *see Cooney v. Ritter*, 939 F.2d 81, 85 (3d Cir. 1991), Wickstrom neither alleges that he is a business broker entitled to the exception, nor that he is a licensed real estate broker able to maintain a cause of action under the statute. (*See generally* FACC & FATPC.) Wickstrom does appear to plead that the contract concerns an "offer or attempt or agree[ment] to negotiate a loan secured or to be secured by mortgage or other encumbrance upon or transfer of any real estate to others . . . " pursuant to N.J. Stat. Ann. § 45:15-3, but this is

not sufficient. Accordingly, the Court dismisses without prejudice Wickstrom's claim for failure to comply with state licensure requirements.

## III.     APPLICABIILTY OF THE CFA

Movants submit that the "procurement of financing does not fall within the ambit of the [CFA]." (TCP's Second Moving Br. 10 (citing *BOC Grp. Inc. v. Lummus Crest, Inc.*, 597 A2d 1109, 1112 (N.J. Super. Ct. Law Div. 1990) & *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 568 (N.J. 1978)).) The Court finds that the cases cited by Movants are inapposite to the present alleged facts. The first cited case, *BOC Group, Inc.*, is distinguishable because the purported "merchandise" in *BOC Group, Inc.* is not like the service at issue here as alleged by Wickstrom. Instead, as the *BOC Group* Court explained, the "complex petroleum refining process at issue is not a service, nor is it merchandise under N.J. Stat. Ann. § 56:8-1(c). What was sold to the plaintiff was an idea. [The defendant] did not sell a service but a design." *BOC Grp., Inc.*, 597 A.2d at 1112. In *Daaleman*, the New Jersey Supreme Court relayed that "[h]ere involved are adjustments in defendant's utility's billings as a result of variations in the costs of it of [sic] purchasing and storage gas supplies. As heretofore noted, a Purchased Gas Adjustment Clause is a tariff mechanism . . . ." *Daaleman*, 390 A.2d at 569. "[T]his holding was also based on the court's conclusion [that] insomuch as the utility operated under the jurisdiction of the Board of Public Utility Commissioners of the State of New Jersey (the "PUC"), 'the subject matter of plaintiff's complaint . . . [was] within the exclusive jurisdiction of PUC.'" *J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1272 (3d Cir. 1994) (quoting *Daaleman*, 390 A.2d at 570). Here, Wickstrom's claims arise out of the Agreement between the parties related to the procurement of financial services.

Movants also raise an argument of statutory interpretation. They emphasize that under the CFA, claims arise "in connection with . . . the advertisement of any merchandise or real estate," and argue that the Agreement does not govern merchandise or real estate, so the CFA must not apply. (TCP's Second Moving Br. 11 (quoting N.J. Stat. Ann. § 56:8-2); *see also* Kwasny's Second Moving Br. 11-17, ECF No. 48-1 (arguing that the relationship between the parties is not protected by the CFA upon evaluation of the four factors used to determine whether the CFA should apply to the merchandise at issue, enumerated in *All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc.*, 200 A.3d 398, 408 (N.J. 2019)).) Movants properly set forth the parameters of what constitutes merchandise under N.J. Stat. Ann. § 56:8-1, specifically "any objects, wares, goods, commodities, services or anything offered, directly or indirectly, to the public for sale." (*See* TCP's Second Moving Br. 11.) In doing so, however, Movants gloss over the applicable clause, "***services or anything offered***." (*Id.* (emphasis added).) Movants assert that their services cannot qualify as merchandise because the "subject business opportunity was not offered to the public at large, and thus, cannot qualify as 'merchandise' within the meaning of N.J. S[tat. Ann.] § 56:8-1." (*Id.*)

Wickstrom responds by appending *Twin Capital Partners, LLC v. Andreotta*, No. MON-L-4311-19, an April 2021 New Jersey Superior Court decision. The *Andreotta* court denied a nearly identical motion to dismiss the individual defendant/third-party plaintiff's CFA claims based on the same arguments here: that the CFA is inapplicable because the services were not

offered to the public at large, and that the claims are barred by the economic loss doctrine.[5] (*See*

TCP's Moving Br. 9-11; *see* Wickstrom's TCP Opp'n Br. 17-20; *see* New Jersey Law Division's

Statement of Reasons Den. Movants' Mot. to Dismiss, Cert. of Bruce E. Baldinger ("Baldinger

Cert.") Ex. A, ECF No. 55-1); *see* Order & Statement of Reasons [] Den. [Kwasny's] Mot. to

Dismiss [] (hereinafter, "Law Div. Kwasny Decision") at 6-9, *Twin Capital Partners, LLC v.*

*Andreotta*, No. MON-L-004311-19 (N.J. Super. Ct. Law Div. Apr. 16, 2021) ID:

LCV2021985526; *see also* Order & Statement of Reasons Granting in Part & Den. in Part

Movants' Mot. to Dismiss [] (hereinafter, "Law Div. TCP Decision") at 19-22, *Twin Capital*

*Partners, LLC v. Andreotta*, No. MON-L-004311-19 (N.J. Super. Ct. Law Div. Apr. 16, 2021) ID:

LCV2021985508.

In the *Andreotta* decision, the court determined,

> As a threshold matter, the court rejects the argument that plaintiff
> cannot assert a CFA violation because this type of financing does
> not fall within the parameters of the act for the reasons stated in the
> companion opinion related to the other defendants.  Likewise, the
> court rejects the invocation of the economic loss doctrine to bar the
> CFA and common law claims.

*See* Law Div. Kwasny Decision 8.  In reaching its decision, the *Andreotta* court discussed the

statute and relevant case law.  The *Andreotta* court ultimately concluded that "[a]t this juncture,

the court cannot state that there is no cause of action under the CFA as a matter of law because

---

[5] The Court notes that Wickstrom attached only the decision denying Kwasny's motion in its
entirety, but neglected to attach the decision entered the same day, partially granting and partially
denying TCP and Pappalardo's motion. (*See* Order & Statement of Reasons [] Den. [Kwasny's]
Mot. to Dismiss [] at 3, Baldinger Cert. Ex. A, ECF No. 56-1); *see* Order & Statement of Reasons
[] Den. [Kwasny's] Mot. to Dismiss [] at 3, *Twin Capital Partners, LLC v. Andreotta*, No. MON-
L-004311-19 (N.J. Super. Ct. Law Div. Apr. 16, 2021) ID: LCV2021985526 ("Even though it was
filed by all defendants, it is essentially a motion on behalf of Kwasny that was filed after the other
defendant[s'] motion."); *see generally* Order & Statement of Reasons Granting in Part and Den.
in Part Movants' Mot. to Dismiss [], *Twin Capital Partners, LLC v. Andreotta*, No. MON-L-
004311-19 (N.J. Super. Ct. Law Div. Apr. 16, 2021) ID: LCV2021985508.

more information is needed regarding the relationship of the parties and the transaction." *See* Law Div. TCP Decision at 22.   The *Andreotta* court, consequently, declined to dismiss the CFA claim[.]" *See id.*

The Court finds the *Andreotta* court's decision persuasive and adopts its reasoning for purposes of this Opinion.  The Court, therefore, similarly declines to dismiss the CFA claim.

## IV.   PAPPALARDO AND KWASNY AS PARTIES TO THE FATPC

The Court turns to Pappalardo's and Kwasny's respective motions to dismiss the FATPC against them as individuals.  (*See* TCP's Second Moving Br. 12-14; *see* Kwasny's Second Moving Br. 5-11.)  As set forth above, the Court is similarly persuaded by the *Andreotta* court's disposition denying Pappalardo's motion to dismiss the amended third-party complaint as against him.  *See* Law Div. TCP Decision at 25-26 (finding that Pappalardo is a proper party).  Kwasny advances different arguments in his motion than those made in the state court matter, and therefore the state court's reasoning has limited applicability here.  *Compare* Mem. of Law in Supp. of Third-Party Def. [] Kwasny's Mot. to Dismiss the Am. Third-Party Compl. at 10-11, *Twin Capital Partners, LLC v. Andreotta*, No. MON-L-004311-19 (N.J. Super. Ct. Law Div. Oct. 20, 2020) ID: LCV20201877491 (arguing that the third-party complaint should be dismissed against Kwasny because he is shielded from liability pursuant to N.J. Stat. Ann. § 42:2C-30) with (Kwasny's Second Moving Br. 5-11 (arguing that Kwasny must be dismissed because Wickstrom fails to allege that Kwasny induced him to enter the Agreement)); *see also* Law Div. Kwasny Decision at 11-12 (finding that Kwasny was a proper party).

### A.   Pappalardo as a Party to the FATPC

Pappalardo moves, as he did in the prior action, to dismiss the FATPC's claims against him because "he was not a party to the subject transaction" pursuant to N.J. Stat. Ann. § 42:2C-30,

which "operates to shield individual members of a limited liability company from liability." (*See* TPC's Second Moving Br. 12-14); *see also* Law Div. TCP Decision at 7-8 (recounting TCP & Pappalardo's same argument pursuant to N.J. Stat. Ann. § 42:2C-30).   The *Andreotta* court explained that under *Allen v. V and A Brothers, Inc.*,

> In light of the broad remedial purposes of the CFA and the expansive sweep of the definition of "person," it is clear that an individual who commits an affirmative act or a knowing omission that the CFA has made actionable can be liable individually.   Although the statute would also impose liability on the individual's corporate employer for such an affirmative act, there is no basis on which to conclude that the statute meant to limit recourse to the corporation, and thereby to shield the individual from any liability in doing so.   On the contrary, we have held that corporate officers and employees could be individually liable pursuant to the CFA for their affirmative acts of misrepresentation to a consumer.

*See* Law Div. TCP Decision at 25-26 (quoting *Allen v. V & A Bros., Inc.*, 26 A.3d 430, 441 (N.J. 2011)).   In *Allen*, the New Jersey Supreme Court further concluded, "[o]n the contrary, we have held that corporate officers and employees could be individually liable pursuant to the CFA for their affirmative acts of misrepresentation to a consumer."   *Allen*, 26 A.3d at 441 (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366-67 (N.J. 1997)).   The *Andreotta* court's determination that "[t]herefore, under <u>Allen</u>, the court finds that a cause of action may be asserted against Pappalardo given the early stages of litigation" is well-founded.   Movants' motion to dismiss Pappalardo as an improper party to the FATPC is denied.

**B.   Kwasny as a Party to the FATPC**

Kwasny moves to dismiss the FATPC as against him. (*See* Kwasny's Second Moving Br. 5-11.)   He asserts that "the affirmative acts, knowing omissions, or violation of regulations promulgated under the Act[,] N.J. Stat. Ann. §§ 56:8-2, 56:8-4, must have been undertaken in connection with the sale or advertisement of the service," in accordance with *Castro v. NYT*

*Television*, 851 A.2d 88, 95 (N.J. Super Ct. App. Div. 2004).  (*See id.* at 8-9.)  He states that "[n]o allegation is contained within the [FATPC] as to any omission or active misrepresentation of Kwasny in connection with the sale, or in this case the execution of the retainer agreement," nor that "Kwasny did anything to entice Wickstrom to execute the retainer agreement, a necessary element to maintaining such a cause of action."  (*Id.* at 9.)

Wickstrom responds that he has adequately pled that "Kwasny was a member and officer and established procedures" for TCP.  (*See* Wickstrom's Kwasny Opp'n 18.)  He also argues that Kwasny is a proper party to the FATPC under the "participation theory" of liability, outlined in *Saltiel v. GSI Consultants*, 788 A.2d 268, 272 (N.J. 2002), and found applicable in the context of claims under the CFA by *Allen*, 26 A.3d at 443-44.  Kwasny declined to reply to this argument. Notably, the plaintiff in the previous state action made the same argument for the application of the participation theory of liability to Kwasny's conduct. *See* Law Div. Kwasny Decision at 11-12 (relying on *Saltiel v GSI Consultants*, and citing allegations that Kwasny was general counsel for TCP, as well as the underlying contract designating that in-house "counsel would be working with customers on TCP's behalf").  The *Andreotta* court concluded that "at this stage of litigation, Kwasny should be considered a party because [of] his various alleged misrepresentations and omissions discussed above[,]" presumably meaning those concerning his conduct and the conduct of TCP provided in its Statement of Facts section. *Id.* at 12.

According to the New Jersey Supreme Court, "[t]he essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort[,]" or here, statutory violation. *Saltiel*, 788 A.2d at 272.  "In other words, an officer of a corporation, actively participating in the fraud practiced by it, cannot escape personal liability on the ground that he was acting for the

corporation, or that it alone was nominally the party to a contract procured by fraud." *Kugler v. Koscot Interplanetary, Inc.*, 293 A.2d 682, 704 (N.J. Super. Ct. Ch. Div. 1972). The New Jersey Supreme Court has made clear that in both the CFA context and as expressed in the tort participation theory, "that employees and officers of a corporation may be found to bear individual liability to consumers." *Allen*, 26 A.3d at 443. "It is not necessary, however, that directors, sought to be held liable, personally make false representations to plaintiff, but it is sufficient that they approve thereof." *Kugler*, 293 A.2d at 704. Under the participation theory, "individual liability for a violation of the CFA will necessarily depend upon an evaluation of both the specific source of the claimed violation that forms the basis for the plaintiff's complaint as well as the particular acts that the individual has undertaken." *Allen*, 26 A.3d at 444.

Here, Wickstrom's allegations are sufficient to state a claim against Kwasny individually for violations of the CFA. Wickstrom alleges that Kwasny was an agent of TCP, claiming that "Pappalardo and Kwasny are members and managers of TCP," that "Kwasny was the individual designated as in house counsel to TCP[,]" and that they "are the individuals who are responsible for deriving and implementing TCP's policies." (*See* FATPC ¶¶ 9, 11, 17.) He alleges that Kwasny actively participated in the scheme, claiming that Kwasny "made written demands for falsified and inflated sums upon Wickstrom and threatened to provide a lien on properties of Wickstrom's companies." (*Id.* ¶ 15.) Wickstrom states that during negotiations, Pappalardo represented that TCP's management team included in-house counsel who would assist in the care of his assets, (*id.* ¶¶ 12, 19), and that this representation was later memorialized in the Agreement (*see* Agreement, Am. Answer, FACC & FATPC Ex. A). Wickstrom asserts that this representation served as "a material inducement" because it provided him with reassurance "that a licensed professional would be overseeing and shepherding his project with TCP." (*Id.* ¶ 19.) Finally, Wickstrom alleges that

Pappalardo's representation on behalf of TCP was false, further emphasizing Kwasny's active participation in the fraud. (*Id.* ¶ 20 ("At all times relevant to the transaction and this litigation, TCP's statement that it retained in-house counsel was false. Instead, TCP had one of its owners, Kwasny, act as counsel. Kwasny is an individual who has been disbarred in New Jersey and suspended in other states.").)

The FATPC states adequate allegations to sustain a claim for inducement under the CFA against Kwasny. His motion to dismiss the FATPC in its entirety is, therefore, denied.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, and other good cause shown, TCP's and Pappalardo's Second Motion to Dismiss Counts I and III of Wickstrom's FACC and the FATPC is granted as to Wickstrom's claims and allegations concerning the alleged failure to maintain real estate licensure under N.J. Stat. Ann. § 45:15-1, *et seq.* The Court denies the remainder of TCP's and Pappalardo's Motion and also denies Kwasny's Motion to Dismiss the FATPC.

February 27, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE